(No. 5492-)

Hugh R. Ashmore, Administrator of the Estate of James C. Ashmore, Deceased, Claimant, vs. The Board of Governors of State Colleges and Universities, Respondent.

*Opinion filed February 18, 1971.*

Eva L. Minor and Paul F. Davidson, Attorneys for Claimant.

William J. Scott, Attorney General, for Respondent.

Dove, J.

This is a cause of action brought by Hugh R. Ashmore as Administrator of the Estate of James C. Ashmore, deceased, for damages for the wrongful death of James C. Ashmore.

On October 26, 1967, James C. Ashmore, then 22 years of age, was a student at Western Illinois University, Macomb, Illinois. About 2:00 p.m. on October 26, 1967, James C. Ashmore reported for instructions at the beginning swimming class conducted by the University. James C. Ashmore, with ten other members of the class, was instructed to swim three lengths of the swimming pool, each length being approximately 75 feet. In attempting to follow such instructions, James C. Ashmore entered the pool, and began to swim about 2:15 p.m. At approximately 2:45 p.m. he was found at the bottom of the pool, and shortly thereafter was pronounced dead.

Pursuant to a joint stipulation of the parties herein, the investigation report of the Western Illinois University's Security Office was submitted into evidence as the joint exhibit of claimant and respondent. It was further

stipulated by the parties herein that such report shall constitute the evidence on the question of liability.

At the time of the incident there were present at the pool, James C. Ashmore, his ten fellow class members, the instructor, a lifeguard, and three members of the water polo team.

The following constitutes pertinent portions of the investigative report:

"At 2:10 p.m. attendance was taken by Paul Hutinger, the instructor, and his attendance book indicated that the Subject was present . . . total attendance for the class numbered eleven.

The instructor stated that after the class attendance was taken several general items were discussed, including the skills learned at the last class session and items to be covered for this period. The class was instructed to swim three lengths of the pool (75' 1" each length) starting at the shallow or east end, and they were to follow each other at intervals of five yards starting in lane five. Upon reaching the west or deep end, they were to move over to their left into lane six, and swim back to the shallow end . . . The instructor stationed himself at the shallow end by lanes five and six, while a guard, Patrick Doud, was standing on the deck at the south side of the pool up toward the deep end.

The class consisted of advanced and beginner swimmers. The Subject was classified as a beginner along with David Holmes, Mike Hughes, Keith Bartlow, and John Fritz . . .

It was David Holmes, of the beginner group, who had the last known verbal contact with the Subject. According to Holmes, after the instructor gave directions, the students moved over to lane five, and commenced swimming at approximately 2:15 p.m. Holmes stated that the Subject and he were the last two members of the class to start swimming. Holmes recounted that the Subject and he had a short discussion at this point as to who should go first. It was agreed that, since the Subject was already in position, he should lead off, which he did. Holmes indicated that the Subject dove in and initially swam rapidly, almost catching the swimmer in front of him. However, before Holmes dove in he noticed that the Subject appeared to be struggling, and was definitely having difficulty. Holmes did not think the Subject's difficulty warranted calling to the instructor, so he dove in, and, since he also was a beginner, turned his full attention to his own swimming. After Holmes left the pool, he did not remember to check for the Subject throughout the remainder of the class . . .

. . . The instructor then moved to the north side of the pool for diving instructions at approximately 2:25 p.m. It was at this time according to another student, Keith Bartlow, that Bartlow actually counted the group at the diving session, since it appeared smaller than usual. Also, he was curious to see how evenly divided the groups were that the guard had put them in. He counted five students in each group, including himself.

"The students were given a few minutes of diving instructions by the guard, Patrick Doud, and were watched individually by the instructor and Doud, as the students singularly attempted the skill. At no time did two students dive in together. They waited for each member to return before the next swimmer proceeded. The students then tried their skills, one at a time off the low diving board on the same side of the pool. The class was dismissed at 2:40 p.m. Within a short time (less than two minutes) after the diving session, a student, Douglas Dirks, shouted to Doud that there was someone in the water. The Subject was located toward the south side of the pool, near lane five at the 10' level, near the bottom of the pool . . . ."

The record contains no explanation as to why the instructor and the lifeguard failed to see the deceased struggle and go down. He apparently sank from sight within seconds after he entered the pool, and was not missed by the instructor or the lifeguard at any time during the balance of the class, a period of about thirty minutes, even though the instructor was allegedly grading each student individually on his swimming skills. His absence was not noticed when the class moved to the other side of the pool for individual diving instruction. Only after the class was dismissed did a student notice the deceased, James C. Ashmore, lying at the bottom of the pool.

It is the opinion of this Court that the negligence of respondent was the proximate cause of the death of James C. Ashmore. No evidence was introduced which tended to show that James C. Ashmore was guilty of any contributory negligence.

An award is hereby made to Hugh R. Ashmore, Administrator of the Estate of James C. Ashmore, deceased, in the amount of $12,000.00.